Next case Lockwood Alvarez v. Barr 20-9502. Counsel for appellant if you'd make your appearance and begin please. Good morning your honor this is James Lamb representing Mr. Carlos Lockwood may it please the court. Mr. Lockwood's case is unique the first reason being his unusual background a Caucasian American military family adopted him as an infant and he would in fact now be a U.S. citizen were not for the fact that his adoptive parents failed to file a single form for him prior to his 18th birthday. He grew up here was educated in the United States and spoke no Spanish prior to his removal to Mexico and throughout his life he struggled to reconcile his Hispanic Mexican heritage with his desire to be perceived as white and American as Dr. Vogel noted at length in her mental health evaluation. In fact so thoroughly does Lockwood come across as white and American that at the beginning of this case he pursued DNA testing to rule out the possibility that his adoptive father was in fact his biological father excuse me. The second reason that this case stands out is for its two prior instances of torture at two different times and locations usually even a single instance of torture is highly probative of a cat claim in particular probative of the predictive risk in the future of torture should the person be returned to their home country and yet here the board denied relief despite not one but two instances of pretty well documented prior torture even stating that even if it assumed that in fact Lockwood had been tortured twice and that the Mexican police conducted these instances it would still deny and the board's decision stems from several legal errors. The first is that the board misapplied its own precedent and that of the circuits on cat claims involving generalized country conditions and speculative evidence Lockwood's quite well documented case. It also improperly placed a burden on Lockwood to demonstrate that he could not relocate within Mexico when no such burden appears in the cats the regulations or indeed in case law. And finally on that issue the immigration judge made that mistake the BIA didn't make that mistake. Is that fair? That's correct your honor in a sense in other words the immigration judge acknowledged she was placing this burden on Mr. Lockwood when the board reviewed the decision interestingly the board did not review any of Mr. Lockwood's legal contentions including his contention that there was an improper burden shift however it did affirm the IJ's conclusion on relocation under a clear error analysis in other words and that's the and that's the error on this point that you're relying on it was the erroneous application of the clear error standard not that the BIA had improperly required Mr. Lockwood to show that relocation had been foreclosed is that my understanding correctly? I believe so your honor yes we're basically saying that the BIA should have reviewed that question and given that we raised and preserved it in front of the board and so turning first to the way in which the board erred in applying the substantial grounds standard under CAT the board concluded that Mr. Lockwood had not established that relocation is is foreclosed and the board did not review the IJ's legal assertion that Lockwood excuse me I got a little sidetracked here and so what happened here is the board applied its own case law on speculative and general claims and an example of this and this happened with at both the IJ and the BIA level is matter of JFF and this is a case that I believe both agency levels cited and in matter of JFF we have a case where a person from the Dominican Republic on psychiatric medication applied for a cat protection and the IJ assumed without any evidence that that medication would not be available in the Dominican Republic that without it this person would become uncontrollable would encounter the police would be arrested would be incarcerated and then finally would be tortured while in prison and so what the attorney general did on review is decide that that kind of undocumented chain of speculation not with each step in the chain not proven is insufficient to demonstrate a cat claim and the other cases that the board in the IJ site almost uniformly deal with very similarly sparse evidentiary records in almost no instance that I'm aware of in any instance of actual substantiated past torture and very little in in the way even of particularized threats and there's only one case that the that the IJ cited that in fact involved an affirmance of a cat grant and that is a matter of GA 23 INN decision 366 and this case I think is is significant because in matter of GA the respondent also was facing removal back to his home country of Iran after being convicted of a drug trafficking offense and so the BIA relied it appears solely on his own testimony that his fair skin that his last name and that his prior criminal record and his lengthy period of time in the United States would be sufficient upon removal to Iran to bring him to the attention of authorities and that they would ultimately torture him because he basically he was a Christian and had lived in the United States for a long time had a criminal history in this case there was no past torture there were not even any instances of past threats and I think that this is important because what the BIA did was it took that testimony from the respondent and then it looked very carefully and in-depth at the respondents country conditions evidence and most of this country conditions evidence was generalized country conditions evidence is the kind of evidence that the regulation in HCFR 1208.16c directs the agency to consider and the board in its opinion specifically cited four different country conditions reports including two very general reports from the Department of State and said it was considering this evidence and in the aggregate the respondents testimony on the one hand and this generalized country conditions on the on the other and it concluded that in fact this person had a risk of torture now Lockwood's case is I think very similar in key respects to that in matter of GA except that his case is better documented he can show two prior instances of torture and he can show a plethora frankly of country conditions evidence ranging from the general so country conditions reports like Department of State country conditions reports human rights watch reports and so forth and you can and he adduced evidence that's very specific for example photographs of Puerto Vallarta and Tijuana City police vehicles matching the descriptions he gave both to the asylum officer during his initial interview at the border and later in testimony to the immigration judge you don't you do you you don't question do you that the threat though has to be particular runs to Mr. Lockwood it's not a question whether Mexico is a horrible place it's not a question what it let's assume that people get routinely arbitrarily tortured in Mexico let's make that assumption even if that were true that would not mean that your client was targeted for a torture and therefore that would not be enough I mean do you accept the premise that it has to be particular eyes to him that you have to there the predictive judgment in question is that either government officials would target him or others would target him with the acquiescence of the government I mean do you accept that premise I do your honor and I accept it to the extent that we can assume that majority of the population in Mexico will not be tortured during their lifetimes if we assume that that's true then I think it's fair to place a burden on the applicant to demonstrate a particularized risk in other words some way in which they stand out from the generalized population but I also think we have to recognize that that's really an analytical tool well wait a minute wait a minute my hypothetical implied that the country conditions were poor and that many people were tortured even if that were the case your client would have to indicate that he had a particularized reason to believe he would be tortured in other words they would have to target him for torture do you accept that premise I do your honor again I have to say that so long as as we can accept that it we're not reaching a level where 50 more than 50% of the population is experiencing torture because the cat only requires that torture be more likely than not and by or at the instigation or with the acquiescence of government officials but it has to be torture that's directed at the individual is the point that I'm getting at the case and it has so it has it's somebody mr. Lockwood has to show that somebody wanted to torture him in particular yeah he has to show that he has a risk of torture in the home country it doesn't have to be a particular group of individuals as it would and I note this as it would were this a statutory withholding of removal or other of the persecutors becomes important the only question in a cat case is objectively whether the person faces a greater than 50% likelihood of torture by officials or with their acquiescence and in fact that is exactly the case that the the board faced in matter of GA nobody was named as the as the persecutors in GA it wasn't necessarily going to be a particular person or agency within Iran it was simply that he was going to become come to the attention of the of the authorities and so in this case we find it highly probative that mr. Lockwood was tortured at two different times and at two different locations and I believe we've adduced this excuse me a substantial amount of evidence that these were more likely than not Mexican police officers or people acting with arguendo at least to the extent that it said that even if they assumed that these were Mexican cops and even if they assumed that that they tortured mr. Lockwood he still couldn't establish a substantial likelihood and the problem here is that not to be flip but Lockwood it seems would have to be an incredibly unlucky person to be just an average Mexican at the wrong place at the wrong time twice on two different times and locations and so I believe that that in itself strongly suggests that Lockwood has particularized characteristics that heighten his risk didn't mr. Lockwood live in Mexico for two years without being tortured he did and and that was something that I think the the IJ and the board gave a lot of weight to and why shouldn't I mean if he's able to find a place to live for two years without being tortured why is it not fair to say predictably that's not there's not a substantial likelihood that he will be tortured in the future well your honor the first thing I would say is that there is no time window within which cat claims have to play out and and there in fact was a substantial period of time between the first instance and the second instance of torture and so then what happens is after the second instance of torture Lockwood returns to a different part of Mexico and he lives for a time with a an American pastor in a gated community and at that point his problems began again when he moved out of the gated community and he once again as he testified began to face harassment by people particularly police officers who assumed that he was essentially a Caucasian American and during testimony at one point he described an incident where this happens and the police began asking him specifically where are the drugs where is it where is this where is that and and Lockwood tried to tell them hey I'm just an American I'm sorry a Mexican citizen and they simply would not believe that and so what I think we see in Lockwood's second attempt at relocation is a circumstance where the same particularized characteristics that brought him to the attention of his torturers on pre on the previous two occasions were showing themselves again and ultimately Lockwood returned to the United States border to seek relief after being threatened with death by somebody who you know may or may not have have also been involved with Mexican law enforcement and and one more point I'd like to make about this is that these claims specifically of Mexican police officers torturing people with cigarettes burning them for money have been recognized in other cases and we cited in briefing to one from 2015 out of the Seventh Circuit Rodriguez Molinaro v. Lynch and another one out of the Ninth Circuit from 2017 Barajas Romero v. Lynch where the respondent testified that off-duty cops showed up at his house began asking him for money and when he didn't provide it began burning him with cigarettes and in both those cases the petitions were granted and the cases were were remanded and so I think that that it is wrong of the immigration judge to put so much weight on the fact that Lockwood was able to live for a time in Mexico without being tortured in light of his two prior instances of torture and if there are no other questions I'd like to reserve the rest of my time for rebuttal. Mr. Lamb, can I ask you I'm sorry to eat up and say rebuttal but I do have a question and I want to give you an opportunity to disabuse me of this it seems to me that you have a very good argument that he is anglicized that that's the reason he was targeted twice in Tijuana and Puerto Vallarta in different places and after and after he left the gated community the problem that I see for your art for this part of your argument is that we have a very narrow standard of review and if the BIA or had substantial evidence in which to make a contrary finding and that is that his anglicized characteristics were not so significant that they would have made him a target if he were to go back now it seems to me that we would be hard-pressed to say that that viewing the evidence of the light basically favorable in in favor of the ruling that there wasn't enough evidence to support that conclusion why why am I wrong about that um your honor I think that this case can be resolved on legal review and I see my time is up briefly the BIA cited the wrong types of cases in support of its contention that there was no particularized risk here and they cited cases where as I said there was no past torture very little evidence of past persecution very little evidence at all and so I think that we can see that the BIA what the BIA should have done was analyze this case legally like it did the case at issue a matter of GA and all I see that my time is up thank you I apologize to you mr. thank you for the question your honor thank you counsel good morning your honors Raya Jarwan may please the court Raya Jarwan on behalf of the Attorney General is the respondent in this matter this case does turn on whether mr. Alvarez has met his burden of proof to demonstrate eligibility for deferral of removal and that burden requires that he meet this more likely than not standard that is his burden to meet this standard not the government's burden and that is a more it's a greater than 50% standard as counsel stated and he has simply not met that burden a because of the particularized threat and future torture and be because of his ability to internally relocate relocation it is his burden as you posit it but why why was why did he not fail to satisfy the burden that not relocating relocating was not really an option that would be beneficial to him to avoid torture if I understand your question your honor you're asking why he didn't meet his to relocate and live for two years in Mexico without harm the reason he left Mexico according to the record is because he had some employment dispute over some financial payment with with an individual named Tony but in those two years I don't I think his argument is a legal one that the immigration judge had erred not in the in the ultimate factual finding but in placing the saying I think is that that's an erroneous standard the standard as he points out is what the BIA said which is completely different than what the immigration judge said I I don't agree with counsel's contention that this was an incorrect standard that the agency used under the Hernandez case that I cited in my brief this circuit does not follow the Ninth Circuit's relocation standard the Ninth Circuit in Maldonado makes relocation a dispositive factor and burden shifts we do not have that standard here what we have here is according to the Hernandez case which is a 2016 case that the night that the Lemus Galvez case is the one that this court has has cited to which is the impossibility standard but so so I I don't agree with counsel's contention and the board also does not provide the incorrect and neither does the immigration judge does not provide an incorrect standard in in fact the agency makes it quite clear this was his burden to show that he could not read internally relocate and that's in the of the overall standard or number of factors that this petitioner must demonstrate and he lived in Mexico for I believe the record indicated from 2011 to 2018 he is claiming that there were two incidents in 2016 in which he was tortured but aside from those he has been able to internally relocate within Mexico safely so the language the language that relocation was foreclosed he did not establish that relocation was foreclosed in your view that is consistent with the legal standard that's applicable here right yes based on the pin site is for the Hernandez Torres versus Lynch case it was an unpublished decision but it was a 2016 decision in which this court discusses the Ninth Circuit pre Maldonado standard and it discusses that the drug cartel had been involved in some kind of a turf war and the Ninth Circuit determined that substantial evidence supported the denial of cat because the petitioner failed to establish that internal relocation within Mexico is impossible and that same reasoning applies here that's the quote from this court in that unpublished decision but regardless I would also point to the fact that there was this particular as risk of future torture as well so there's multiple factors that must be considered here and mr. Alvarez did not make a showing of that particular eyes risk let's talk about that for a 973 where you had an individual who was a gang member in the United States he had gang tattoos when he went to Mexico part of what allowed him to get cat relief was the fact that he was that he would be targeted by three different groups the police other gang members vigilantes because he for purposes of this and ones that could not be a face in this situation why is that analogous not analogous to mr. Lockwood Alvarez who's saying I present as a white American and and and that is not something I can do anything about and therefore I will continually be targeted just as this individual with tattoos by virtue of that why why does that logic not apply well first I want to make clear that obviously there's the difference between the asylum and withholding standard and this was a cat case I look this way to make sure it was okay so even even in a situation where the claim is that he looks more Anglo and that's why he's targeted the cat does not require that does not have a motive requirement there's no requirement that the persecutors have a reason to to go after this particular individual that's not where I'm going what I'm going is predictive judgment that he would be tortured his explanation for validating his predictive judgment is look at how I look and I will continually be hit upon and so we're not talking about whether you know he's being persecuted for being white what we're talking about is it makes it likely more likely than not that he will be persecuted substantial likelihood and I'll stop using the word persecuted is that gets us in a different realm that he will be tortured but I think that his his claim is no different than many anglicized Mexicans and the point of cat is to provide protection for those who specifically would be individually targeted is targeted events though it's not that he doesn't speak Spanish it's that he when he walks down the road he will be identified as other and because he's identified as other there's a substantial likelihood that there will be adverse actions in the nature of torture directed at him because he is other why is that not good enough the government's position is that does not rise to the more likely than not standard he lived there for seven years and he is providing us two instances only that does not meet the more likely than not standard and the the board case law discusses the words individually targeted or particularized risk matter of GK says that the petitioner must show that he would more likely than not be individually targeted upon his return to Ghana rather than providing vague generalized evidence of criminality certainly many people are extorted in Mexico certainly many people are targeted for all sorts of reasons his claim is that he looked like he had money the individual stopped their trucks and asked him if he had money and then threw him in the back of the trucks he also claimed that it was because he was anglicized but there were other instances in which he claimed that the police harassed him where he claimed it was because he was anglicized and he was not tortured so again more likely yeah I mean yeah maybe I don't know that he's saying that because I'm anglicized every single Mexican police officer is going to torture me but what he is saying is that that to follow up on judge Holmes questioning that that will make him a target and I wonder if the immigration judge didn't simply misunderstand the claim when the immigration said judge said on page nine without more it is unclear why these individuals in other words the assailants from these two prior episodes would still seek to harm him in the future I think and then they go on to say that he wasn't able to pay the ransom so why would he continue to be targeted well that does suggest that the immigration judge just simply didn't understand the petitioners claim obviously he's not saying that these that these same Mexican police are gonna are still going to try to get my $10,000 he's saying that that because I'm anglicized that's just as judge Holmes pointed out that that's going to continue to differentiate him from everybody else in Mexico but I think the immigration judge was focusing on the speculative nature of this claim again many people who are anglicized in Mexico look more Anglo are not tortured and he's providing a race judge say that the immigration judge considered the country conditions evidence as a whole and determined that such vague evidence of generalized violence does not meet the standard of more likely than not and provide and there's case law that allows this court to to also agree with that statement in Lysak v. Lynch it affirmed the board statement that Lysak's reliance on country conditions information was generalized evidence of violence and crime not particular to him which is insufficient to demonstrate the more likely than not standard again just simply being someone who looks Anglo and who is stopped twice in eight years does not rise to a more than 50% standard mr. mr. lamb discussed the GA case matter of GA quite extensively but in that case that's actually quite distinguishable because the country conditions evidence there was specifically tailored to address somebody in the petitioner's position he was an Iranian Christian of Armenian descent he was known to have been convicted of a controlled substance violation he was known to have spent a significant amount of time living in the u.s. and he testified specifically that he would be identifiable by government authorities at the airport as a non-muslim ethnic minority based solely on his surname and the loss of his legal status in the United States would also focus the attention of Iranian authorities on investigating his criminal history and background and the state department reports confirmed this type of search and extensive questioning of these specific types of petitioners so that's very different from this general claim that well I look anglicized and thus I'm more likely than not to be tortured but I would also add that I think the immigration judge did point to something very important this individual was stopped twice and did not provide any ransom money he did not have anything to give them and he was released twice which counters which undermines his argument that he is going to continually be tortured in Mexico if we don't know who these individuals were we don't know if they'll know if he's back in Mexico we don't know why they would can target him again four years after he's left and we don't know where why they would target him at all quite frankly if he's already been harassed and has provided them nothing I find that argument to be very puzzling no one is suggesting that it's going to be the same assailants the next time I mean and so the fact that he didn't give money to the two people to in the two episodes where he was tortured doesn't mean there isn't going to be another group of people who are going to try their luck does it sir certainly there might be criminals uh generally or oh government officials that's what or police officers yes okay did give him that benefit it could be police officers it could be private individuals but being a victim a crime victim does not necessarily meet the more likely than I'll stand but there are plenty of crime victims in Mexico and just simply being fearful of those instances of crime simply being fearful of the general country conditions in a in a specific country that means we would have to provide a torture grant to no millions and hundreds I get that but but the point I'm making is I thought that the argument that you were making and the one that the I think it was the immigration judge articulated was simply the notion that I didn't give them money when they tortured me suggests that Doug cuts against me in a predictive judgment that I will be tortured again and that is logically I don't see how those two things go together unless you're talking about the exact same people who tortured me in the two prior incidents and we're not talking about that right where I think the the immigration judge may have been um referring and I and I can only speculate here but I think there was testimony that Mr. Alvarez believed but was not sure that one of the police officers was the same in the two instances but he was very clear that he really didn't know he was simply speculating so the immigration judge may have been responding to that but that was only one part of the immigration judge's overall analysis the immigration judge also said responding has not identified any threats of harm since leaving Mexico or that those who harmed him in the past are still motivated to find and harm him um he he believes that he would be extorted again but it's unclear why any police would seek to extort him in the we'll just stop uh thank you counsel for your thank you your honors argument case is submitted